UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 11 CR 646 |
| JAVON JOHNSON, | ) | |
| | ) | Judge John W. Darrah |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion to Suppress.  Defendant is charged in

seven counts of the superseding indictment with violations of 21 U.S.C. §§ 841(a)(1),

843(b), and 846.  Defendant seeks to suppress two categories of statements made by

Defendant to a Drug Enforcement Agency ("DEA") Agent on June 21, 2011:  (1) a pre-

*Miranda* statement made by Defendant, after Defendant's arrest, while Defendant was

held in the DEA Agent's vehicle, and (2) post-*Miranda* statements made by Defendant to

the DEA Agent at a Chicago Police Department ("CPD") facility during questioning.  An

evidentiary hearing was held on August 28, 2012, and the parties thereafter submitted

position papers.  At the evidentiary hearing, DEA Agent Patrick Bagley and

Assistant U.S. Attorney Sheri Mecklenburg provided testimony.

## BACKGROUND

The following is based on the evidence presented at the suppression hearing and

from the parties' written submissions.  On June 16, 2011, Magistrate Judge Mason

approved a criminal complaint, charging Defendant, among others, with violations of the

Controlled Substances Act, 21 U.S.C. § 801 *et seq*.  (Dkt. No. 2, *United States v.*

*Acevedo-Fitz et al.*, No. 11-cr-416.)  On June 17, 2011, Magistrate Judge Mason issued a warrant for Defendant's arrest.  (*Id.*, Dkt. No. 4.)  On June 21, 2011, CPD arrested Defendant at his sister's home at 11242 S. Homewood in Chicago, Illinois, and advised Agent Bagley of Defendant's arrest.  Subsequently, Agent Bagley arrived at the scene.  Agent Bagley showed Defendant a copy of the arrest warrant.  Defendant was placed in the rear seat of Agent Bagley's vehicle; Agent Bagley was seated in the driver's seat.  Agent Bagley testified that he did not subsequently ask Defendant any questions in the vehicle.  Agent Bagley also testified that he did not advise Defendant of his *Miranda* rights because he did not intend on asking Defendant any questions.

At the time of the arrest, Defendant asked why he was being arrested, and Agent Bagley said he did not know and only knew that he had a warrant for Defendant's arrest.  However, when Defendant was placed in the police vehicle, Agent Bagley inserted a CD into the vehicle's CD player; the CD contained the recordings of five intercepted telephone calls between Defendant and another individual.  In the recorded phone calls, Defendant and a co-conspirator can be heard discussing arrangements for drug deals.  Agent Bagley testified that Defendant, after hearing the recording, unprompted, stated: "I shouldn't have fucked with that motherfucker.  He's the police."  Agent Bagley testified that he did not respond to Defendant's comment or ask Defendant any questions.

At some point, Task Force Officer John Mannino entered Agent Bagley's vehicle.  Agent Bagley and Task Force Officer John Mannino transported Defendant to the CPD facility located at 1011 S. Homan Avenue, Chicago, Illinois.  Neither Agent Bagley nor Officer Mannino asked Defendant any questions during the ride to the facility.  After

Defendant was processed, Agent Bagley provided Defendant with a pre-printed Advice

of Rights and Waiver form, containing Defendant's *Miranda* rights.  Defendant signed

the form.

At the police station, Agent Bagley replayed the CD for Defendant at Defendant's

request.  After hearing the CD, Defendant responded that he may have information about

homicides that could relate to the Government's investigation.  Agent Bagley testified

that he also asked Defendant to identify the other individual speaking on the CD,

interviewed Defendant regarding items found during Defendant's arrest at his sister's

home, and asked Defendant to identify an individual in a photo booklet.  Defendant

identified the individual as "Gambino" and added, "That's my guy."  The interview

concluded when Defendant said he did not want to answer any further questions.

## ANALYSIS

As the Seventh Circuit recently explained, statements by a defendant must be

preceded by the *Miranda* warnings if they are the product of a custodial interrogation:

> *Miranda* held that the government may not use statements
> stemming from the custodial interrogation of a defendant
> unless the government has utilized procedural safeguards
> effective to secure the privilege against self-incrimination. .
> . . The privilege against self-incrimination is not imperiled
> by every conversation with the government.  Instead, the
> concern in *Miranda* was with the inherently coercive nature
> of custodial interrogation.  Accordingly, a suspect must be
> both in custody and subjected to interrogation before
> *Miranda* warnings are required.

*U.S. v. Ambrose*, 668 F.3d 943, 954 (7th Cir. 2012) (*Ambrose*).

3

<u>Defendant's Pre-*Miranda* Statement</u>

The Government concedes that Defendant was in custody following his arrest at his sister's residence. (Gov't's Br. at 3.)

Defendant moves to suppress the statement he made to Agent Bagley after Agent Bagley played a recording of telephone calls in Defendant's presence while Defendant was held in Agent Bagley's vehicle. Defendant argues Agent Bagley's conduct was the functional equivalent of interrogation but that Bagley failed to advise Defendant of his right against self-incrimination, as required by *Miranda v. Arizona*, 384 U.S. 436 (1966) (*Miranda*). The Government disputes that Defendant was subject to an interrogation or the functional equivalent of an interrogation when Agent Bagley played the recorded telephone calls for Defendant. However, the authority upon which the Government relies is distinguishable from Defendant's arrest.

*United States v. Vallar*, 653 F.3d 271 (7th Cir. 2012) (*Vallar*), a case relied upon by the Government, presented similar circumstances to those at issue here. The defendant in *Vallar* was arrested at his home and transported to the Dirksen United States Courthouse in Chicago, Illinois; he was not advised of his *Miranda* rights. *U.S. v. Vallar*, No. 05 CR 472, 2006 WL 1156739, at *1 (N.D. Ill. Apr. 27, 2006). After arriving at the Dirksen Courthouse, and before defendant was questioned, agents played five or six audio tapes of intercepted calls in the presence of defendant. *Id*. The defendant was then read his *Miranda* warnings, and the defendant signed an advice-of-rights form. The defendant argued that the playing of the recordings was likely to elicit an incriminating response and were thus an impermissible interrogation because the defendant had not

4

received his *Miranda* warnings.  *Vallar*, 653 F.3d at 286.

The Seventh Circuit held that "[m]erely apprising Vallar of the evidence against him by playing tapes implicating him in the conspiracy did not constitute interrogation." *Id*. at 285.  In the next sentence, however, the Seventh Circuit explained, "But more critical to our analysis is the fact that [defendant] made no statement in response to the tapes before he received and waived his *Miranda* rights."  *Id*.  By contrast, in this case, Defendant *did make* the disputed statement before he was given *Miranda* rights.  In *United States v. Peterson*, 414 F.3d 825, 827-28 (7th Cir. 2005), the Seventh Circuit rejected the defendant's argument that his confession violated *Miranda* where officers gave defendant a long speech, laying out the evidence against him, without previously administering the *Miranda* warning.  After laying out the evidence, the officers then administered the *Miranda* warning, obtained waivers, and secured the defendant's confession.  *Id*. at 827-28.  The Seventh Circuit noted that the problem with defendant's argument "is that none of his own statements *preceded* the warnings."  *Id*. at 828 (emphasis added).  Therefore, the holding in *Ambrose* does not preclude a finding here that the Defendant was subject to the equivalent of an interrogation when he was in Agent Bagley's vehicle.  *See Ambrose*, 668 F.3d at 956.

As mentioned above, Defendant submits that the *Miranda* warnings are required not only prior to express questioning of an individual, but also prior to "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."  *United States v. Wysinger*, 683 F.3d 784, 794 n. 6 (7th Cir.

5

2012) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980) (*Innis*)). An officer

can "interrogate" an individual without asking a single question. *United States v.*

*Richardson*, 657 F.3d 521, 525 (7th Cir. 2011) (quoting *Innis*, 446 U.S. 291, 300–01

(1980)). Here, Agent Bagley, after advising Defendant that he, Bagley, did not know

why Defendant was arrested, unexpectedly played a CD, which contained extremely

incriminating evidence against Defendant, Defendant's admissions in his own voice.

Based on the circumstances set out above, Agent Bagley could reasonably expect to elicit

an incriminating response from Defendant. While the Government refers to *Innis* in its

response to Defendant's Motion, it argues that Agent Bagley's actions did not rise to the

level of an interrogation. However, it relies on *United States v. Johnson*, which found

that an officer's reading aloud of a search warrant was not intended to elicit an

incriminating response. 680 F.3d 966, 977 (7th Cir. 2012). However, the facts in

*Johnson* are also readily distinguishable from the circumstances regarding Defendant's

interrogation. Here, Agent Bagley confronted Defendant with direct inculpatory

evidence, without any prior warning that Defendant was not required to respond, by

playing a recording of discussions between Defendant and a co-conspirator. Agent

Bagley should have known his conduct regarding the use of the CD while Defendant was

under arrest in the vehicle was reasonably likely to elicit an incriminating response from

Defendant and was the functional equivalent of a pre-*Miranda* interrogation. The

Seventh Circuit has "stated that, under *Innis*, the issue is whether a reasonable objective

observer would believe the encounter was reasonably likely to elicit an incriminating

response from the suspect and therefore constituted the functional equivalent of

6

interrogation." *Enoch v. Gramley*, 70 F.3d 1490, 1500 (7th Cir. 1995).

The failure to administer a *Miranda* warning prior to Defendant's statement in the vehicle renders the statement inadmissible. Accordingly, Defendant's Motion to Suppress is granted as to any statement Defendant made while in Agent Bagley's vehicle, before arriving at the CPD facility.

Defendant's Statements after Receiving *Miranda* Warning

Defendant further moves to suppress statements that Defendant made to Agent Bagley at the police facility after Defendant was advised of his *Miranda* rights, arguing that these statements are "fruit of the poisonous tree" under *Wong Sun v. United States*, 371 U.S. 471 (1963).[1] The Government argues that these statements were attenuated from the statement that Defendant made in Agent Bagley's vehicle after hearing the recording of telephone calls.

In *Oregon v. Elstad*, 470 U.S. 298 (1985) (*Elstad*), the "Supreme Court held . . . that the failure to administer *Miranda* warnings prior to the defendant's initial inculpatory statement did not require suppression of his subsequent *Mirandized* confession."
*Stewart*, 388 F.3d at 1087 (citing *Elstad*, 470 U.S. at 301)). The Supreme Court reconsidered the issue in *Missouri v. Seibert*, 542 U.S. 600 (2004) (*Seibert*), but issued a plurality opinion. Four Justices held that in cases involving pre- and post-*Miranda* interrogations, the post-warning statement is admissible only if the *Miranda* warning was

---

[1] The Fourth Amendment "fruits" doctrine does not apply in the Fifth Amendment *Miranda* context. *See U.S. v. Stewart*, 388 F.3d 1079, 1087 (7th Cir. 2004) (*Stewart*).

"effective." *Id*. at 615. This determination depends on "the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first." *Id.* at 615. Justice Kennedy concurred in the judgment only and stated he would consider such factors only if law enforcement officers deliberately employ a question-first strategy to circumvent *Miranda. Id.* at 622.

The *Seibert* factors weigh in favor of admission of Defendant's post-*Miranda* statements. In *Seibert*, before the defendant was given the *Miranda* warnings, an officer interrogated defendant for 30 to 40 minutes and obtained a confession. *Id*. at 604. After taking a 20-minute break and advising defendant of her *Miranda* rights, the same officer referenced the defendant's prior confession and secured a second confession. A majority of the Justices concluded that the lower court correctly suppressed the defendant's pre- and post-warning confessions.

In this case, Defendant was not asked any questions regarding criminal activity until after he was advised of his *Miranda* rights.[2] Defendant made the first inculpatory statement in Agent Bagley's car; thereafter, he was transported to the Homan Square CPD facility and processed. More than an hour passed between the statement Defendant made in the car after listening to the CD and the second *Mirandized* interrogation. Moreover, the two statements made by Defendant occurred in different locations. The evidence showed the two interrogations were handled in distinct manners by Agent

---

[2] Agent Bagley did ask Defendant some basic, biographical questions.

Bagley, as no questions were asked of Defendant in the first session. The only overlap between the two interrogations came from Defendant, who requested to listen to the CD recordings again during the second session. Therefore, Defendant's *Miranda* warning was effective. Because the statements Defendant made thereafter are admissible, Defendant's Motion to Suppress is denied as to these statements.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Suppress [29] is granted in part and denied in part.

Date:    November 14, 2012    

_____
JOHN W. DARRAH
United States District Court Judge